# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY, a Connecticut Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>ED BOLAND CONSTRUCTION, INC.,<br><br>    Defendant. | CV-15-71-GF-BMM<br><br>**ORDER** |

## INTRODUCTION

Plaintiff The Phoenix Insurance Company (Phoenix) brought this declaratory judgment action for a determination of its rights and obligations under a Commercial General Liability (CGL) policy issued to Defendant Ed Boland Construction, Inc. (EBC). Phoenix seeks a ruling that it has no duty to defend EBC in the federal lawsuit entitled *Northbank Civil & Marine, LLC v. Ed Boland Construction, Inc.*, CV 15-38-GF-BMM. Presently before the Court are the parties's cross-motions for summary judgment on whether Phoenix possesses a duty to defend EBC.

United States Magistrate Judge John Johnston entered Findings and

Recommendations in this matter on September 15, 2016. (Doc. 43). Judge Johnston concluded that Phoenix had no duty to defend or indemnify EBC with respect to the claims asserted by Northbank in Cause CV-15-38-GF-BMM. Judge Johnston recommended that Phoenix's Motion for Summary Judgment be granted, and that EBC's Motion for Summary Judgment be denied. (Doc. 43 at 22-23). EBC filed objections to Judge Johnston's Findings and Recommendations on September 29, 2016. (Doc. 44). Phoenix filed a response to EBC's objections on October 11, 2016. (Doc. 45).

## STANDARD OF REVIEW

The Court reviews de novo findings and recommendations to which objections are made. 28 U.S.C. § 636(b)(1). No review is required of proposed findings and recommendations to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 149-152 (1986).

## BACKGROUND

Northbank was the general contractor on a construction project with the Federal Highway Administration (FHA) in 2014. Northbank had contracted with the FHA to repair and reconstruct the Swiftcurrent Creek Spillway Bridge in Glacier National Park. EBC was a subcontractor on the project. EBC had contracted with Northbank to perform drilling and pile installation services. The

subcontract imposed a requirement on EBC to perform its work under the general direction of Northbank and in accordance with the primary contract between Northbank and the FHA.

EBC began its work on or about September 30, 2014. Difficulties with the drilling and pile installation arose shortly after work began. EBC informed Northbank on October 2, 2014, that it had encountered unforeseen conditions at the work site that hindered its performance. The unforeseen site conditions included oversized rip-rap, concrete, and timbers. The FHA informed Northbank on the same date that it had concerns over EBC's ability to complete the pile installation according to contract specifications. The FHA alleged that EBC had brought equipment for use on the project that differed from the equipment that it had represented that it would be using in its installation submittal to the FHA.

Northbank issued EBC a three day notice to cure on October 7, 2014. The notice informed EBC that it had three days to gather the equipment that the FHA had requested be brought to the site or be declared in default under the terms of the subcontract.

Northbank determined on about October 14, 2014, that EBC was unable to complete its subcontract according to project specifications. Northbank terminated EBC from the project. Northbank sought replacement contractors to complete

EBC's drilling and pile installation work. The project was delayed while Northbank was hiring the replacement contractors. Some construction equipment incurred downtime during the construction delay period.

Northbank filed the underlying action, *Northbank Civil & Marine, LLC v. Ed Boland Construction, Inc.*, CV 15-38-GF-BMM, on May 6, 2015. Northbank asserted claims against EBC for breach of contract, negligence, and negligent misrepresentation. Northbank sought to recover from EBC: (1) the additional sums that it had paid the replacement contractors over and above the original amount it expected to pay EBC for the drilling and pile installation work (Doc. 23-3 at 5); and (2) certain expenses that Northbank had incurred during the construction delay period that were allegedly caused by EBC's failed performance. (Doc. 23-3 at 6-7); Doc. 12-7 at 2-3).

The additional sums Northbank paid to replacement contractors included $8,000 paid to subcontractor Bay Materials LLC (Bay Materials) to reimburse Bay Materials for an insurance deductible Bay Materials paid for the repair of a damaged excavator. (Doc. 12-7 at 4). The expenses Northbank incurred during the construction delay period included: rental of a hydraulic crane that sat idle during the construction delay period ($6,500); rental of "earthwork/roadway" equipment that sat idle during the construction delay period ($10,200); the use of two work

trucks that sat idle during the construction delay period ($3,780); and the rental of ground thawing equipment ($7,788). (Doc. 12-7 at 2-3).

EBC was insured unde Commercial General Liability Policy Number DT-CO-3595N220-PHX-14, issued by Phoenix, with a policy period of April 1, 2014 to April 1, 2015. EBC tendered Northbank's Complaint to Phoenix. Phoenix agreed to defend EBC under a reservation of rights. Phoenix filed the present declaratory judgment action on August 27, 2015. The underlying lawsuit (Cause CV 15-38-GF-BMM) has been resolved. The Court dismissed Cause CV 15-38-GF-BMM with prejudice on December 20, 2016, pursuant to a stipulation of the parties.

## MONTANA INSURANCE LAW

### 1. Policy Interpretation

The interpretation of insurance contracts generally presents a question of law for the Court. *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, ¶ 23 (Mont. 2008). The Court must examine the insurance contract as a whole. *Id.* Insurance contracts should be interpreted according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products. *Park Place Apartments, L.L.C. v. Farmers Union Mut. Ins. Co.*, 247 P.3d 236, 239 (Mont. 2010). The Court must enforce clear and explicit terms as they are written. *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, ¶ 16 (Mont. 2008). The

burden rests on the insured to establish coverage under the general coverage provision. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, ¶ 29 (Mont. 2005). The burden rests on the insurer to establish the applicability of a coverage exclusion. *Id*. The insured has the burden to prove an exception to an exclusion. *Id.* at ¶ 30.

## 2. **Duty to Defend**

An insurer's duty to defend its insured arises when a complaint against the insured alleges facts which, if proven, would result in coverage under the policy at issue. *Tidyman's Mgmt. Servs. v. Davis*, 330 P.3d 1139 ¶ 22 (Mont. 2014). There is no duty to defend "if there is no coverage under the terms of the policy based on the facts contained in the complaint." *Steadele v. Colony Ins. Co.*, 260 P.3d 145, ¶ 25 (Mont. 2011). The insurer has no obligation to search for information outside of the complaint to determine whether coverage exists. *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, ¶ 56 (Mont. 2013). An insurer may not ignore, however, information that it actually obtains. *Id*. When an insurer can show, based on all information before it, that the policy does not cover an insured's claim, the insurer possesses no duty to defend. *Tidyman's*, 330 p.3 at ¶ 23.

## DISCUSSION

The CGL policy that Phoenix issued to EBC provides coverage for "bodily injury or property damage" that is caused by an "occurrence" that takes place in the coverage territory. (Doc. 23-5 at 20). The CGL policy defines the term "property damage" as:

1. "Physical injury to tangible property, including all resulting loss of use of that property" . . .; or

2. "Loss of use of tangible property that is not physically injured."

(Doc. 23-5 at 34). The CGL policy defines the term "occurrence" as:

"an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

(Doc. 23-5 at 33).

Judge Johnston concluded that Phoenix had no duty to defend EBC in Cause CV 15-38-GF-BMM, because the CGL policy did not provide coverage for the claims asserted by Northbank in that action. Judge Johnston concluded that coverage did not exist for the following reasons: (1) none of the damages claimed by Northbank in Cause CV 15-38-GF-BMM could be characterized as "property damage" as defined under the CGL policy; (2) none of the damages claimed by Northbank in Cause CV 15-38-GF-BMM were caused by an "occurrence" as defined under the CGL policy; and (3) multiple coverage exclusions in the CGL

policy operated to bar coverage for Northbank's damage claims in Cause CV 15-38-GF-BMM.

A. **Property Damage**

Judge Johnston concluded that Northbank had alleged no claims for "property damage." EBC argues that Judge Johnston's finding is erroneous for two reasons. First, EBC argues that Judge Johnston's finding is erroneous because Northbank has asserted a claim for the replacement cost of a damaged well casing. (Doc. 44 at 19). Second, EBC argues that Judge Johnston's finding is erroneous because the construction delay expenses sought by Northbank relating to the hydraulic crane, roadway equipment and work trucks, constitute claims for "loss of use" of tangible property. (Doc. 44 at 15-19).

1. **Well Casing**

Northbank has stated, in response to a formal discovery request, that it is not aware of any damage to a well casing. (Doc. 12-7 at 3). Northbank's Complaint in Cause CV 15-38-GF-BMM contains no claim for the replacement cost of a well casing. EBC has failed to show that a claim for a damaged well casing exists. Judge Johnston did not err when he determined that Nothbank had asserted no claim for a damaged well casing.

2. **Hydraulic Crane, Roadway Equipment and Work Trucks**

EBC argues that Northbank has alleged "loss of use" damages because it seeks to recover damages for the loss of use of a hydraulic crane, roadway equipment, and work trucks that sat idle while Northbank was securing a replacement contractor. Multiple courts, including the Ninth Circuit, have held that in order to constitute "loss of use" of tangible property, the property must actually be rendered useless for some period of time, as opposed to merely being unused. *See e.g.*, *Sony Computer Entertainment America, Inc. v. American Home Assur. Co.*, 532 F.3d 1007 (9th Cir. 2008) (no loss of use of discs where one device would not play them, but alternate devices would play them). Northbank has not alleged that any of the referenced equipment was rendered inoperable by EBC's failed performance. Northbank has alleged only that EBC's failed performance caused certain equipment to sit idle while the project was delayed. Idle equipment is not enough to constitute loss of use of tangible property for purposes of the CGL policy.

The cases cited by EBC in support of its argument that construction delay costs may constitute "property damage" are distinguishable. The cases all involve situations where defective workmanship caused damage to a structure that resulted in a delay in the project. *See Gibraltar Cas. Co. Sargent & Lundy*, 574 N.E. 2d 664, 672 (Ill. App. Ct. 1990) (defective installation of structural steel necessitated

repairs in a building which resulted in construction delays); *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 550 N.E. 2d 1032 (Ill. Ct. App. 1989) (additional construction costs incurred to rid building of asbestos); *Ohio Cas. Ins. Co. v. Bazzi Const. Co. Inc.*, 815 F.2d 1146 (7th Cir. 1987) (additional construction costs incurred in remodeling structurally defective building). No defective work by EBC caused damage that needed to be repaired that resulted in a construction delay. EBC's failure to finish its work merely caused other subcontractors to sit idle until Northbank could find a replacement for EBC. Judge Johnston did not err when determined that Northbank had no claim for loss of use damages.

## B. Occurrence

The CGL policy applies only to "property damage" that is caused by an "occurrence." The policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 23-5 at 20, 33). Montana law defines the term "accident" as an "unexpected happening that occurs without intention or design on the part of the insured." *Safeco Ins. Co. of America v. Liss*, 16 P.3d 399, ¶ 36 (Mont. 2000). Judge Johnston concluded that even if the economic losses alleged by Northbank properly could be construed as "property damage," no coverage existed under the

CGL policy because none of Northbank's economic losses were caused by an "occurrence."

EBC argues that Judge Johnston's finding was erroneous for two reasons. First, EBC argues that Judge Johnston's finding was erroneous because Northbank's economic losses were caused by unforeseen conditions at the project site that slowed EBC's work, and that the discovery of unforeseen site conditions should constitute an "occurrence" under the CGL policy. Second, EBC argues that Judge Johnston's finding was erroneous because Northbank has alleged that it incurred economic losses due to EBC's defective workmanship and defective workmanship constitutes an "occurrence" under Montana law.

### 1. <u>Unforeseen Site Conditions</u>

The subcontract between EBC and Northbank required EBC to perform its work in accordance with the primary contract between Northbank and the FHA. (Doc. 23-2 at § I-1). The primary contract between Northbank and FHA anticipated that the contractor may encounter unforeseen site conditions. The primary contract contained a provision for payment and adjustment of the price in the event that unforeseen site conditions were encountered. (*See* Doc. 32 at ¶ 38). Given that the primary contract specifically anticipated the possibility of unforeseen site conditions, the discovery of unforeseen site conditions by EBC

cannot be considered an unexpected happening or accident. The discovery of unforeseen site conditions did not constitute an occurrence under the CGL policy. Judge Johnston did not err when he concluded that unforeseen site conditions did not constitute an occurrence.

### 2. Defective Workmanship

EBC argues that defective workmanship is an occurrence under the CGL policy. The Montana federal courts that have addressed this issue disagree with EBC's position. Montana federal courts, applying Montana law, have concluded that defective workmanship is not considered an "occurrence" under the insuring language of a CGL policy. *See Northland Cas. Co. v. Mulroy*, 2015 WL 4461882 *3-4 (D. Mont. 2015), *citing King v. State Farm & Cas. Co.*, 2010 WL 1994708 (D. Mont. 2010); *see also* 14 *Couch on Insurance* § 129:4 (3d ed., West 2014) (a claim for faulty workmanship, in and of itself, is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the fortuity required to constitute an accident). Judge Johnston did not err when he determined that Northbank's alleged defective workmanship did not constitute an occurrence.

### C. Coverage Exclusions

Judge Johnston determined that even if Northbank's Complaint in Cause CV 15-38-GF-BMM could be construed as asserting claims for "property damage" caused by an "occurrence," multiple coverage exclusions in the CGL policy would operate to bar coverage for Northbank's damage claims. EBC disagrees with Judge Johnston's finding. EBC argues that no coverage exclusions apply in this case.

### 1. **Exclusion (a)**

Exclusion (a) of the CGL policy precludes coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (Doc. 23-5 at 21). The subcontract between Northbank and EBC contains provisions describing the remedies available to Northbank if EBC failed to supply adequate materials or to complete its work. These provisions authorize Northbank to contract with other subcontractors to complete the work and charge the costs to EBC. These provisions further authorize Northbank to deduct any overhead costs, profit loss, and attorney fees from any amount it owes to EBC. Overhead costs, profit loss, and attorney fees are the precise damages that Northbank sought to recover in the underlying action against EBC.

Northbank sent EBC a Notice to Cure on October 7, 2014. The Notice had two effects: (1) it gave EBC a chance to cure its deficient performance; and (2) it

put EBC on notice that its failure to cure would result in a default of the subcontract. EBC made the intentional business decision to default on the subcontract by not curing the alleged deficiencies. EBC made this decision with knowledge of the consequences of its default. EBC therefore should have expected the damage claims asserted by Northbank in Cause CV 15-38-GF-BMM. Judge Johnston did not err when he determined that exclusion (a) precluded coverage for the claims asserted by Northbank.

### 2. Exclusion (j)(6)

Exclusion (j)(6) precludes coverage for the repair or replacement of an insured's faulty workmanship. Exclusion (j)(6) provides that insurance coverage does not apply to "'[p]roperty damage' to . . . property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." (Doc. 23-5 at 23). The CGL policy defines "your work" as "[w]ork or operations performed by you or on your behalf" and includes any "[w]arranties or representations" made by an insured concerning the performance of its work. (Doc. 23-5 at 34-35).

Northbank alleged in Cause CV 15-38-GF-BMM that the damages it incurred were caused by EBC's failure to perform its work in a timely manner, EBC's failure to perform its work in a workmanlike manner, and EBC's failure to

properly complete its work. These allegations fall within the Policy's definition of "your work." Exclusion (j)(6) would operate therefore to bar coverage for the claims asserted in Northbank's Complaint.

Coverage exclusion (j)(6) does contain a "products-completed operations hazard" (PCOH) exception. (Doc. 23-5 at 33). The PCOH exception would not, however, apply in this case. The PCOH provision insures against certain risks that occur after a project is finished and in the owner's control. *Fireguard Sprinkler Sys. Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 650 (9th Cir. 1988); *Lukes v. Mid-Continent Cas. Co.*, 2013 WL 496203, *6 (D. Mont. 2013). The PCOH exception applies only when the insured's work has been completed or abandoned. (Doc. 23-5 at 33).

Work is deemed complete at a particular site, under the CGL policy, (1) when all work called for in the contract is complete, or (2) when a portion of the work to be done at a site is put to use by someone other than another contractor or subcontractor working on the same project. (Doc. 23-5 at 33-34). Work is deemed abandoned only when the work has been taken over by another party. *See* 9 *Couch on Insurance* § 129:30 (2015). Work that is ongoing is not included in the PCOH exception. *Lukes*, 2013 WL 496203 at *4. Work is not completed or abandoned merely because a contractor has been terminated from a job. See *e.g.*,

*Clarendon America Ins. Co. v. General Sec. Indem. Co. of Ariz.*, 124 Cal. Rptr. 3d 1, 6 (Cal. Ct. App. 2011) (when contractor is terminated from job but retains its rights under the contract, there is no completion or abandonment of work); *McGowan v. State Farm and Cas. Co.*, 100 P. 3d 521, 525-26 (Colo. App. 2004) (work is not complete or abandoned for purposes of PCOH when contractor is terminated from construction project for improper work). Judge Johnston did not err when he determined that exclusion (j)(6) precluded coverage for the claims asserted by Northbank.

### 3. **Exclusion (m)**

Exclusion (m) of the CGL policy states that there is no coverage for "[p]roperty damage" to . . . property . . . arising out of:

> 1. A defect, deficiency, inadequacy, or dangerous condition in 'your product' or 'your work;' or
>
> 2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."

(Doc. 23-5 at 24). All of the damages claimed by Northbank in Cause CV 15-38-GF-BMM arise from EBC's alleged inadequate performance and breach of the subcontract. Judge Johnston did not err when he determined that exclusion (m) precluded coverage for the claims asserted by Northbank.

### **CONCLUSION**

The Court finds no error in Judge Johnston's Findings and Recommendations and adopts them in full.

**ORDER**

1. Phoenix's Motion for Summary Judgment (Doc. 21) is GRANTED.

2. EBC's Motion for Summary Judgment on Duty to Defend (Doc. 26) is DENIED.

3. This case is DISMISSED with prejudice.

4. All deadlines and hearings are VACATED.

5. The Clerk is directed to enter judgment accordingly.

DATED this 18th day of January, 2017.

*/s/ Brian Morris*
Brian Morris
United States District Court Judge